THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT S. BLADES,<br><br>              Plaintiff,<br><br>    v.<br><br>BURLINGTON COUNTY<br>JAIL/BURLINGTON COUNTY<br><br>              Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 02-3976 (JBS)<br><br>**OPINION** |

APPEARANCES:

Mr. Robert S. Blades
P.O. Box 2851
Camden, New Jersey 08101
     Plaintiff pro se

Michael Paul Madden, Esq.
MADDEN, MADDEN & DEL DUCA, P.C.
108 Kings Highway East
Suite 200
P.O. Box 210
Haddonfield, NJ 08033
     Attorney for Defendant Burlington County Jail/Burlington
     County

     This matter comes before the Court upon several motions

including cross-motions for summary judgment and a motion for

intervention.  This matter originates from an action brought by

Plaintiff Robert Blades ("Plaintiff" or "Blades") who was

previously employed with the Burlington County Corrections

Department ("BCCD" or "Defendant").  Plaintiff has two claims

remaining from his original Complaint after this Court's August

3, 2004 Opinion and Order (the "August 3 Order"): (1) that he was

unlawfully sanctioned and wrongfully terminated by the BCCD in

retaliation for his efforts to seek reasonable accommodations for

his disability (brought under Title V, sec. 503 of the Americans with Disabilities Act (the "ADA", 42 U.S.C. § 12203); and (2) that the BCCD retaliated against him when they terminated him in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2917.  For the reasons discussed below, Defendant's motion for summary judgment will be granted.  In addition, Plaintiff's cross-motion for summary judgment and motion for intervention will be denied.

I.   **BACKGROUND**

   A.   **Plaintiff's Medical Condition and Work History**

   Plaintiff Robert Blades was a corrections officer with the BCCD at the Burlington County Jail from January 18, 1994, to April 10, 2000.  (Pl.'s Amended Complaint ("FAC") ¶ 4.) Plaintiff sustained back injuries while working and on May 5, 1997, he requested four weeks of light duty and that the BCCD allow him to use a high back chair due to his back condition. (FAC ¶ 27-30.)  This request was granted.  (Deposition Transcript of Robert Blades at 63, Def.'s Ex. E; Aff. of Warden Juel Cole, Def.'s Ex. J.)  The Correction Department's light duty policy, which was developed for the purpose of lessening the financial hardship to injured employees, consisted of desk work in lieu of the normal, more physical tasks required of a full duty corrections officer.  According to the light duty policy, the amount of time a corrections officer could remain on light duty

was limited to a period of six weeks.  (Light Duty Policy, Def.'s
Ex. L.)  Plaintiff's request for light duty was granted but his
request for a high back chair was denied for security reasons.
(FAC ¶ 26.)

On June 6, 1997, at the end of the four week light duty
period, Plaintiff sought to extend his light duties for an
additional two months.  (FAC ¶¶ 32, 35; Cole Aff. ¶ 12.)  This
request was partially granted, and Plaintiff was granted an
additional two weeks of light duty.  (Cole Aff. ¶ 12.)  On June
18, 1997, Plaintiff was instructed that he had to either return
to full duty work or take a leave of absence without pay until
such time as he was able to return to work and perform the
essential functions of his job as a corrections officer.  (Id.)
On June 18, 1997 and June 22, 1997, Plaintiff submitted doctor's
notes approving him to return to work at full duty status.  (FAC
¶¶ 41, 42.)

On June 20, 1997, Plaintiff requested and was granted a
leave of absence without pay.  (Id.)  On July 8, 1997, Plaintiff
requested that BCCD extend his leave of absence until September
20, 1997, due to impending back surgery.  (Id. ¶ 45.)  Defendant
partially granted Plaintiff's request and he was ordered to
return to work on August 11, 1997.  (Id. ¶ 45.)  Because he
failed to return to work after August 11, 1997, he was
disciplined.  Finally, on September 20, 1997, Plaintiff received

approval for an additional leave.  After September 20, 1997,
Plaintiff remained absent from work until January 4, 1998 on
approved leaves of absence without pay.  (Id. ¶ 50, 51.)

**B.   Plaintiff's Disciplinary History**

Plaintiff testified that, at the beginning of his
employment, he received and read a manual setting forth the
policies and procedures of the Corrections Department of the
BCCD.  (Blades Dep. Tr. 26.)  Specifically, Section V, Article I
of the "Burlington County Corrections Department Rules and
Regulations for Custody Personnel, Staff and Contract Services
Personnel" (the "Rules and Regulations") states that an officer
shall not be absent from duty without proper authority nor absent
from duty without notice.  (Rules and Regulations, Def.'s Ex. at
F.)  Moreover, the Rules and Regulations state that no officer
shall abuse or excessively use sick leave.  (Id.)

During the course of his employment, Plaintiff was
repeatedly disciplined for matters such as neglect of duty,
insubordination and unsatisfactory attendance.  (Memo of Augustus
Mosca, Def.'s Ex. G.)  Sanctions for violation of the Rules and
Regulations ranged from reprimands to suspensions and would
gradually increase according to progressive discipline
guidelines.  (Blades Dep. Tr. at 31.)  A representative sample of
Plaintiff's disciplinary history includes:

- a letter of reprimand for neglect of duty (July 8, 1994);

4

- a one-day suspension for neglect of duty (October 13, 1994);

- a two-day suspension for neglect of duty (June 2, 1995);

- a six-day suspension for neglect of duty (September 20, 1995);

- a six-day suspension without pay for insubordination and other violations of rules and regulations (April 18, 1996);

- a letter of reprimand for misuse of public property (November 19, 1996);

- a ten-day suspension without pay for violation of rules regarding the abuse of sick days (December 17, 1996);

- a reprimand for failure to return a qualifications inquiry (August 21, 1997).

Moreover, as Plaintiff admits in his deposition, Plaintiff was disciplined between four and five times between 1994 and 1995 for abusing the BCCD's attendance policy. Plaintiff has also received numerous letters and discipline warning memos between 1994 and 1996 including 28 letters of reprimand relating to days when Plaintiff was absent from work without calling, 19 letters for tardiness, and eight letters of reprimand for calling out when he had no sick time left.

Despite repeated suspensions, reprimands and warning memos by BCCD, Plaintiff continued to be neglectful of his duties, refuse orders from superiors and disregard Defendant's Rules and Regulations concerning his attendance. Specifically, in 1997 and 1998, Plaintiff was suspended for 20 days without pay for

insubordination.  In addition, he was charged with prisoner abuse and received multiple warning letters related to lateness.

    **C.**   **Plaintiff's Administrative Proceedings and Subsequent Termination**

        **1.**   **Charges before the New Jersey Division of Civil Rights**

On January 20, 1998, the New Jersey Division of Civil Rights ("NJDCR") forwarded to the BCCD a discrimination charge against Defendant in which Plaintiff alleged that he was subject to discrimination on the basis of a physical disability for which he was denied a reasonable accommodation of extended light duty. (FAC ¶ 47.)  On February 3, 1998, an arbitration hearing on Plaintiff's grievance was held.  (Cole Aff. ¶ 26.)  On March 5, 1998, the arbitrator issued a written decision denying Plaintiff's grievance and determining that Defendant did not act improperly when it denied Plaintiff's request for an extension of light duty. (Arbitration Opinion and Award, Def.'s Br. at Ex. M.) The arbitrator also found no evidence that the employer implemented unwarranted discipline for Plaintiff's conduct. (Id.)

        **2.**   **Claims before the Office of Public Employees Occupational Safety and Health**

Plaintiff also filed a claim of disability discrimination with the office of Public Employees Occupational Safety and Health ("PEOSH").  (FAC ¶¶ 30-31.)  PEOSH went to the Burlington County Jail for an on-site investigation, but determined that

there was no evidence of discrimination.  (Id. ¶¶ 30-31.)  After PEOSH's determination, Plaintiff withdrew his PEOSH appeal.

### 3. The BCCD's Preliminary Notice of Disciplinary Action

In March of 1999, the BCCD served a Preliminary Notice of Disciplinary Action ("PNDA") on the Plaintiff charging him with violations of departmental policy and procedure, incompetency and insubordination.  (Cole Aff., Ex. N.)  A second PNDA was served on Blades on November 17, 1999, charging him with resignation not in good standing for a failure to report to duty.  (Preliminary Notice of Disciplinary Action, Def.'s Br. at Ex. O.)  The two PDNA's were joined and proceedings were to be heard at a departmental disciplinary hearing on December 17, 1999. (FAC ¶ 11.)

While these two charges were in the process of administrative appeal, Plaintiff was absent from work without requesting leave from October 12, 1999 through April 6, 2000.  (Final Notices of Disciplinary Action, Def.'s Br. at Ex. Q.)  On April 6, 2000, Plaintiff was terminated from the BCCD by way of two final notices of disciplinary action mailed to Plaintiff's home address.  (Id.)  Plaintiff appealed his termination for insubordination and rules violations to the New Jersey Department of Personnel and requested a hearing de novo, but did not appeal his termination for resignation not in good standing as a result of failing to return to work.  (Cole Cert. ¶¶ 43-44.)  The Office

7

of Administrative Law held hearings in 2001 on Plaintiff's appeal
from the rules violation and insubordination disciplinary
charges.  After the hearing, an administrative law judge
recommended upholding Plaintiff's termination on both grounds.
However, on June 19, 2002, the Merit System Board decided that
the PNDA sanction was valid but reversed Plaintiff's termination
in favor of a six-month suspension.  Plaintiff, however, was
ineligible for the restoration to his position because he
neglected to appeal his termination for resignation not in good
standing.  (Id. ¶ 45.)

     **D.**  **Procedural History**

On August 16, 2002, Plaintiff filed a complaint alleging:
(1) disabilities discrimination under Title I of the ADA, 42
U.S.C. § 12112; (2) a retaliation claim under Title V, of the
ADA, 42 U.S.C. § 12203; (3) claims of race discrimination and
wrongful termination under Title VII of the Civil Rights Act of
1964; (4) a tort claim under the New Jersey Tort Claims Act; (5)
discrimination claims under the New Jersey Law Against
Discrimination and the New Jersey Conscientious Employee
Protection Act; and (6) a claim for violation of the FMLA.  In
the August 3 Order, this Court granted in part and denied in part
Defendant's motion to dismiss, allowing only Plaintiff's
retaliation claim under Title V of the ADA and Plaintiff's claim
under the FMLA to proceed.

On October 17, 2005, Defendant filed a motion for summary judgment.  However, on October 28, 2005, U.S. Magistrate Judge Ann Marie Donio granted Plaintiff's motion to stay and administratively terminated the case. [Docket Item No. 71.] Judge Donio reopened the case on January 20, 2006 [Docket Item No. 74.] and Defendant again moved for summary judgment.  [Docket Item No. 75.]  In response to Defendant's motion, Plaintiff filed (1) a motion to dismiss Defendant's motion for summary judgment[1] and (2) a motion for intervention (to which Defendant timely replied).  [Docket Item Nos. 76, 77 and 78.]  Approximately one month after Defendant filed its motion for summary judgment, Plaintiff filed a cross-motion for summary judgment to which

---

[1]  While Plaintiff's response was captioned "Motion to Dismiss Defendant's Summary Judgment Motion" and was so docketed by the Clerk of the Court, Plaintiff's submission was simply opposition to Defendant's motion for summary judgment and not a separate motion.  As such, this Court will (1) consider Plaintiff's motion to dismiss [Docket Item No. 76] to be in opposition to Defendant's motion for summary judgment and (2) will administratively terminate Plaintiff's motion to dismiss Defendant's motion for summary judgment.  [Docket Item No. 76]

9

Defendant replied.[2]  [Docket Item No. 83, 85.]  The Court did not
hear oral argument on this matter.  See Fed. R. Civ. P. 78.

## II.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both Plaintiff and Defendant moved for summary judgment
pursuant to Rule 56, Fed. R. Civ. P.  Defendant's motion seeks
dismissal of Plaintiff's two remaining claims: (1) his claim of
retaliation under the ADA and (2) his claim of a willful
violation of the FMLA.  Plaintiff's cross-motion seeks summary
judgment on his behalf arguing that, at least with respect to
Plaintiff's retaliation claim, there are enough facts to support
Plaintiff's claims of "a prima facie case" and that summary
judgment is appropriate because Defendant has failed to
articulate a legitimate, non-discriminatory reason for
terminating Plaintiff.

### A.  Standard of Review

A court may grant summary judgment when the materials of
record "show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a

_____

[2]  Prior to filing his cross-motion, Plaintiff filed a
motion for extension of time to file a response to Defendant's
summary judgment motion.  [Docket Item No. 82.]  Defendant did
not oppose Plaintiff's motion. Finding that it is in the interest
of justice to allow Plaintiff to cross-move for summary judgment,
this Court will grant Plaintiff's motion for an extension of time
and enlarge the time for filing Plaintiff's cross-motion nunc pro
tunc to the date Plaintiff filed his cross-motion for summary
judgment.  Plaintiff's cross-motion is fully considered herein.

matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life
Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). A dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the non-moving party." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only
if it might affect the outcome of the suit under the applicable
rule of law. See id. Disputes over irrelevant or unnecessary
facts will not preclude a grant of summary judgment. Id.[3]

The summary judgment standard does not change when the
parties have filed cross-motions for summary judgment. See
Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).
Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an
> agreement that if one is rejected the other is
> necessarily justified or that the losing party waives
> judicial consideration and determination whether
> genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d
555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc.,
402 F.2d 241, 245 (3d Cir. 1968)). If review of cross-motions

---

[3] Moreover, a non-moving party must do more than rely only
"upon bare assertions, conclusory allegations or suspicions."
Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied,
474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477
U.S. at 249-50. Thus, if the non-moving party's evidence is a
mere scintilla or is "not significantly probative," the court may
grant summary judgment. Liberty Lobby, 477 U.S. at 249-50;
Country Floors, 930 F.2d at 1061-62.

for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

## _____B. __Plaintiff's Retaliation Claim under the ADA__

Defendant argues that this Court must reject Plaintiff's retaliation claim for two reasons.  First, Defendant argues that there is no causal connection between Plaintiff's adverse employment action and Plaintiff's request for a reasonable accommodation.  (Def.'s Br. at 5.)  There is no causal connection, according to Defendant, because Plaintiff was not terminated until April 6, 2000, almost three years after he requested a reasonable accommodation for his back injury and over two years after Plaintiff filed a complaint with the NJDCR.  (FAC ¶¶ 28, 38.)  Second, Defendant contends that Plaintiff fails to offer any evidence in support of his claim that Defendant's alleged refusal to provide Plaintiff "light duty" for his back injury and subsequent disciplinary action and termination were acts of retaliation.  Rather, according to Defendant, Plaintiff was terminated for repeated insubordination, neglect of duty and violations of Defendant's rules and regulations.

In support of his cross-motion for summary judgment and in
opposition to Defendant's motion, Plaintiff appears to argue
that, while Plaintiff has established a prima facie case,
Defendant has not met its burden of articulating a legitimate,
non-discriminatory reason for Plaintiff's termination.  Plaintiff
also argues that summary judgment should be denied as to
Defendant and granted as to him because Defendant failed to
produce discovery materials and to provide Plaintiff with a
transcript of Plaintiff's deposition.

### 1.    **Standard for a Retaliation Claim under the ADA**

The ADA provides that "[n]o person shall discriminate
against any individual because such individual has opposed any
act or practice made unlawful by [the ADA] or because such
individual has opposed any act or practice made unlawful by [the
ADA] or because such individual made a charge . . . under [the
ADA]."  42 U.S.C. § 12203(a).  "[I]t is unlawful for an employer
to retaliate against an employee based upon the employee's
opposition to anything that is unlawful under the ADA."
Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir.
2003).  To establish a prima facie case of retaliation under the
ADA, a plaintiff must show: "(1) protected employee activity; (2)
adverse action by the employer either after or contemporaneous
with the employee's protected activity; and (3) a causal
connection between the employee's protected activity and the

13

employer's adverse action." Williams v. Phila. Housing Auth.,
380 F.3d 751, 759 (3d Cir. 2004); Fogelman v. Mercy Hosp., Inc.,
283 F.3d 561, 567-68 (3d Cir. 2002); Krouse v. Am. Sterlizer Co.,
126 F.3d 494, 500 (3d Cir. 1997).

The Third Circuit has held that the McDonnell Douglas
burden-shifting framework applies to ADA retaliation claims.  See
Williams, 380 F.3d at 760.  Indeed, upon the showing of a prima
facie case of retaliation by Plaintiff, "the burden shifts to the
employer to advance a legitimate, non-retaliatory reason for its
adverse employment action."  Krouse, 126 F.3d at 500 (citing
Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)).
"The employer's burden at [the summary judgment] stage is
relatively light: it is satisfied if the defendant articulates
any legitimate reason for the [adverse employment action]; the
defendant need not prove that the articulated reason actually
motivated the [action]."  Id. at 500-01 (citing Woodson, 109 F.3d
at 920.)  Indeed, to obtain summary judgment, the employer must
show that the trier of fact could not conclude, as a matter of
law that (1) the retaliatory animus played a role in the
employer's decision-making process and (2) it had a determinative
effect on the outcome of that process.  Id. at 501.  This may be
accomplished "by establishing the plaintiff's inability to raise
a genuine issue of material fact as to either; (1) one or more
elements of the plaintiff's prima facie case or, (2) if the

employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." Id.

The Third Circuit's decision in Williams is instructive in this case. In Williams, the Third Circuit affirmed the district court's grant of summary judgment on the plaintiff's retaliation claim, holding that the plaintiff failed to proffer sufficient evidence to support his claim. See 380 F.3d at 756. In Williams, the defendant Philadelphia Housing Authority ("PHA") contends that the plaintiff was terminated because he had exhausted all available leave time to which he was entitled and failed to request a leave of absence. Id. at 760. The plaintiff asserted that he was terminated in retaliation for requesting an accommodation (i.e., that he be assigned to "radio room" duty at the PHA). Id. In support of his retaliation claim, the plaintiff relied primarily on the temporal proximity between his request for accommodation (made on October 21, 1998 ) and his termination (on December 29, 1998). Id. at 760.

After assuming that the plaintiff had made a prima facie case, the district court noted that defendant had set forth a legitimate reason for terminating plaintiff, namely, that plaintiff had exhausted all available leave time to which he was entitled. Id. In opposition to the PHA's motion for summary judgment, the plaintiff had presented "very little in the way of

15

evidence showing weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Id. at 759 (internal quotations omitted).  The Third Circuit agreed with the district court's conclusion that the timing of the plaintiff's termination on December 29, 1998, occurring two months after the request for accommodation on October 21, 1998, was not suggestive of a causal connection between the plaintiff's request for an accommodations and his termination.  Id. at 760.  The Court held that "[i]n cases like this one, where the temporal proximity is not so close as to be unduly suggestive we have recognized that timing plus other evidence may be an appropriate test . . . ." Id. (citing Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003)(internal quotations omitted)).  The Third Circuit held then that, the plaintiff failed to put forth evidence suggesting that PHA terminated him because he requested an accommodation.  Id.

### 2.   Cross-Motions for Summary Judgment Upon Plaintiff's ADA Retaliation Claims.

The present case is similar to Williams.  For the purposes of the cross-motions for summary judgment, this Court, like the district court in Williams, will assume that Plaintiff has made out a prima facie case of retaliation.  Under the McDonnell Douglas framework, the burden then shifts to BCCD, the employer, to advance a legitimate, non-retaliatory reason for terminating Plaintiff.  Here, Defendant has done so.  The records clearly

16

indicate that, at best, Plaintiff was an unreliable and insubordinate employee.  Defendant has described a litany of examples of Plaintiff's repeated insubordination, neglect of duty and violation of Defendant's Rules and Regulations.  (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 64.)  Plaintiff has also been repeatedly sanctioned for deliberate and willful abuse of Defendant's attendance policy, gross insubordination and neglect of duty.  (Def.'s SUMF ¶¶ 13-20.)  Specifically, between 1994 and 1996, Plaintiff received 28 letters related to absences from work without calling, 19 letters for tardiness and eight letters for calling out sick with no sick time left.   In Plaintiff's six years as a corrections officer, he was suspended six times for a total of 45 days.

By establishing a record of a steady stream of insubordinate actions, offenses and neglect of duty reprimands, Defendant has satisfied its burden of advancing a legitimate, non-retaliatory reason for its adverse employment action.  Thus, under the McDonnell Douglas framework, the burden shifts back to Plaintiff to proffer evidence from which a reasonable fact finder could conclude that Defendant's legitimate reasons were not their true reasons, but were a pretext for discrimination.  See McDonnell Douglas, 411 U.S. at 802.  It is clear that Plaintiff has not met this burden.  Plaintiff has put forth nothing in the way of evidence showing "weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions" in Defendant's proffered legitimate reasons for terminating Plaintiff.  Moreover Plaintiff's argument that the temporal proximity between his request for accommodation or NJDCR filing and his termination are unpersuasive.[4]  Plaintiff was terminated in April of 2000, almost three years after he requested a reasonable accommodation for his back injury (May 5, 1997) and over two years after he filed his NJDCR complaint (January 20, 1998).  In situations, such as this one, where "the temporal proximity is not so close as to be unduly suggestive," the law requires that a plaintiff set forth other evidence of discrimination.  See Thomas, 351 F.3d at 114 (quoting Estate of Smith v. Marasco, 318 F.3d at 513.) Plaintiff, however has failed to do so.  Indeed, there is no temporal proximity between the termination and the events occurring two and three years previously.

Because Plaintiff has failed to proffer any evidence either that Defendant's proffered reason for termination was pretext for discrimination or that there was a suggestive temporal relationship between his request for an accommodation or filing of a NJDCR complaint and his termination, this Court finds that

_____

[4]  Plaintiff's arguments that Defendant's alleged failure to provide discovery materials or to provide Plaintiff with a transcript of his deposition are also unpersuasive as these matters are immaterial to this Court's consideration of Plaintiff's cross-motion for summary judgment.  Whatever testimony Plaintiff gave at his deposition could have been repeated by Plaintiff in his own affidavit in connection with this motion if he chose to do so.

no reasonable jury could conclude that the events share a casual link for purposes of an ADA retaliation claim.  Defendant's motion for summary judgment upon the ADA retaliation claim is granted and Plaintiff's cross-motion is denied.

> ### C.   **Plaintiff's Family Medical Leave Act Claim**

Plaintiff claims that Defendant violated the FMLA, 29 U.S.C. § 2917(c), by willfully refusing to grant him twelve weeks of unpaid medical leave.  The normal limitations period for an action by an employee against an employer under the FMLA is two years.  See 29 U.S.C. § 2617(c)(1).  However, if the employer engages in a willful violation of the act, the limitations period is three years.  See id. at § 2617(c)(2); Williams v. Schuller Intern. Inc., 29 Fed. Appx. 306, 308 (6th Cir. 2002).  To successfully allege a "willful violation" of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.  See Rhoades v. Stewart Enters., 2003 U.S. Dist. LEXIS 550, *15-16 (E.D. Pa. 2003); Caucci v. Prison Health Serv., Inc. 154 F. Supp. 2d 605, 609 (E.D. Pa. 2001).

Defendant argues that Plaintiff fails to present any evidence supporting his claim that Defendant's FMLA violation was willful.  As such, according to Defendant, the applicable statute of limitations for Plaintiff's FMLA claims is two rather than three years.  Defendant argues that, because Plaintiff brought

this claim more than two years after termination, summary
judgment must be granted in favor of Defendant and Plaintiff's
FMLA claim must be dismissed.  In opposition to Defendant's
motion and in support of his own cross-motion for summary
judgment, Plaintiff fails to put forth an argument other than to
reiterate that Plaintiff willfully violated the FMLA.

     **1.    Summary Judgment in Favor of Defendant is
         Appropriate with respect to Plaintiff's FMLA Claim**

In the August 3 Order this Court denied Defendant's motion
to dismiss on the grounds that Plaintiff failed to bring this
claim in a timely matter.  See Blades v. Burlington County Jail,
Civ. No. 02-3976, slip. op. 30-31 (D.N.J. Aug. 3, 2004).
Specifically, this Court held that, under the theory of
continuing violations, the latest possible application of
Defendant's alleged discriminatory policy against the Plaintiff
was on April 10, 2000.  Further, because on a motion to dismiss
the Court must accept all of Plaintiff's allegations as true, the
Court accepted as true Plaintiff's pleading that Defendant's
violation was willful and fond on the motion to dismiss, that
Plaintiff should have three years from April 10, 2000 to file his
Complaint.  Id.  The Court then held that, because Plaintiff
filed his Complaint on August 18, 2002, Plaintiff's FMLA claim
was not time barred.  Id.

On the present motion for summary judgment, however,
Plaintiff must point to some evidence of willfulness.  Defendant

now argues that Plaintiff has failed to offer any evidence to
support his claim that Defendant willfully violated the FMLA.
(Def.'s Br. at 13.)  This Court agrees.  Plaintiff offers no
evidence that Defendant knew of or showed reckless disregard for
the matter of whether its conduct was prohibited by statute.
Indeed, Plaintiff testified that he was unsure as to why he did
not receive twelve weeks of medical leave, stating only that his
"twelve weeks was cut off for some unknown reason" and that
perhaps it was due to "mishandling of paperwork or altering [his]
paperwork."[5]  (Blades Dep. Tr. at 79-80.)  In fact, Plaintiff
admitted that he did not know if Defendant willfully violated the
FMLA.  (Id. at 138.)  To the contrary, the record is clear that
Defendant acted reasonably and in good faith in attempting to
accommodate Plaintiff's medical leave request.  In fact,
Plaintiff's 31-page statement of undisputed material facts is
devoid of any facts that would raise a genuine issue or suggest
that Defendant acted willfully when either establishing a policy
that denied Plaintiff of twelve weeks of medical leave or
disciplining Plaintiff when Plaintiff failed to return to work
after his eighth week of medical leave.  Because there is no
evidence that any action by Defendant or Warden Cole rises to the

---

[5] There is no genuine issue of material fact surround
Plaintiff's allegations of Warden Coles "altering [Plaintiff's]
paperwork" because Plaintiff admitted that Warden Coles, not
Plaintiff, prepared the paperwork.

level of "reckless disregard" of the requirements of the FMLA,
Plaintiff's FMLA claims will be dismissed as untimely.

> **2.    Summary Judgment in Favor of Plaintiff is Not
> Appropriate with respect to Plaintiff's FMLA Claim**

Plaintiff's cross-motion for summary judgment with respect
to his claim that Defendant willfully violated the FMLA must be
dismissed as moot, since the FMLA claim is untimely, as held
above.

### III. PLAINTIFF'S MOTION FOR INTERVENTION

In connection with his motion for summary judgment,
Plaintiff filed a motion for intervention under Fed. R. Civ. P.
24.  In this motion, Plaintiff requests a "Court of Inquiry,"
apparently seeking that this Court "investigate facts and
report[] thereon."  Plaintiff seeks such inquiries with respect
to actions allegedly taken by Defendant or Defendant's counsel
including the sending of a letter by the Burlington County
solicitor, Defendant's filing of a motion for an extension of
time to answer, and Defendant sending Plaintiff a letter
informing Plaintiff of a telephone conference scheduled before
U.S. Magistrate Judge Donio.

Federal Rule of Civil Procedure 24 provides a procedure by
which an outsider with an interest in a lawsuit may come in as a
party though he has not been named as a party to the existing
litigation.  Fed. R. Civ. P. 24; see 7C Wright, Miller & Kane,
Federal Practice and Procedure Civil 3d § 1901 (2006).  Because

Plaintiff is already a party to this lawsuit, his motion to intervene is moot.  In addition, rather than using Rule 24 as a method to intervene in an action, Plaintiff attempts to use Rule 24 to request a "Court of Inquiry."  Such use of Rule 24 is inappropriate and this Court will not allow it.  As such, Plaintiff's motion for intervention will be denied.

## IV.  <u>CONCLUSION</u>

The Court will grant Defendant's motion for summary judgment on Plaintiff's retaliation claim under Title V of the ADA because Defendant has presented a legitimate, nondiscriminatory reason for plaintiff's discipline and subsequent termination and Plaintiff has failed to raise a genuine issue of material fact that Defendant's' legitimate non-retaliatory reason was pretextual.

In addition, the Court will also grant Defendant's motion for summary judgment as to Plaintiff's claim that Defendant violated the FMLA.  Plaintiff has failed to offer any evidence to support his allegation that Defendant willfully violated the FMLA, meaning that the relevant statute of limitations for bringing an FMLA claim is two years (rather than three years).  Because Plaintiff failed to bring his FMLA claim within that period of time, summary judgment in Defendant's favor as to this claim is appropriate.  For the same reasons expressed above, Plaintiff's cross-motion for summary judgment will be denied as

to his ADA claim and dismissed as moot as to his untimely FMLA claim.

Furthermore, because Plaintiff is already a party to this lawsuit and Plaintiff attempted to use Fed. R. Civ. P. 24 in an inappropriate manner, Plaintiff's motion for intervention is denied.

The accompanying Order is entered.


**February 28, 2007**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge

24